ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MIGUEL ÁNGEL ÁLVAREZ PÉREZ<br><br>Apelante<br><br>v.<br><br>MUNICIPIO DE CATAÑO P/C HON. JULIO ALICEA VASALLO; JUNTA DE PLANIFICACIÓN<br><br>Apelados | KLAN202401040 | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>SALA: 506<br><br>Caso Núm. CT2023CV00076<br><br>Sobre: Sentencia Declaratoria; Violación de Derecho Constitucionales, Debido Proceso de Ley e Incautación Reglamentaria; Daños y Perjuicios |

Panel integrado por su presidente, la Jueza Rivera Marchand, la Juez Barresi Ramos y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2026.

Compareció el Sr. Miguel A. Álvarez Pérez (en adelante, "señor Álvarez Pérez" o "apelante"), mediante recurso de *Apelación* presentado el 21 noviembre de 2024. Nos solicita que revoquemos la *Sentencia* que emitió el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 10 de septiembre de 2024, notificada en la misma fecha.[2] En dicho dictamen, el foro de instancia desestimó, con perjuicio, la *Demanda Enmendada* sobre sentencia declaratoria; violación de derechos constitucionales, debido proceso de ley, "taking", y daños y perjuicios que presentó el señor Álvarez Pérez contra el Municipio de Cataño (en adelante, "Municipio" o "apelado")

---

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Sol de Borinquen Cintrón Cintrón.
[2] Apéndice, anejo 13, págs. 76-93.

Número Identificador

SEN2026_____

y la Junta de Planificación (en adelante, "Junta"), por dejar de exponer una reclamación que justifique la concesión de un remedio.

Por los fundamentos que esbozamos a continuación, confirmamos la *Sentencia* apelada.

**-I-**

El 26 de mayo de 2023, el señor Álvarez Pérez presentó una *Demanda* contra el Municipio de Cataño sobre sentencia declaratoria, violación de derechos constitucionales, debido proceso de ley, incautación reglamentaria, y daños y perjuicios.[3] Posteriormente, el 7 de agosto del mismo año, el apelante enmendó el reclamo para añadir como parte codemandada a la Junta.[4] En sus alegaciones, el señor Álvarez Pérez expuso que, mediante una transacción de compraventa llevada a cabo en el 2005, adquirió una propiedad en el Municipio de Cataño con el fin de reubicar una operación industrial.[5] El terreno donde ubicaba la propiedad estaba calificado como Industrial Uno (I-1). Dicho inmueble consta inscrito en el Registro de la Propiedad de Bayamón con la siguiente descripción:

> ---URBANA: Solar marcado con el número Veinticuatro (24) del Bloque AA de la Urbanización Las Vegas, sitio Flor del Valle, localizado en el Barrio Palmas del municipio de Cataño, Puerto Rico, con un área de QUINIENTOS CINCUENTA Y OCHO METROS VEINTIUN CENTIMETROS CUADRADOS (558.21 m.), colindando por el NORTE, en Diecinueve metros ochenta y tres centímetros (19.83 m.), con la calle número Ocho (8) de la Urbanización Las Vegas; por el NORESTE, en una curva de tres metros con cincuenta centímetros (3.50 m.) de ángulo con la intersección de las Calles Números veintiocho y ocho de la Urbanización Las Vegas, por el NOROESTE, con treinta y cinco metros treinta y seis centímetros (35.36 m.) con terrenos de la Puerto Rico Industrial Development antes Alberto R y José Menéndez; por el ESTE, en veintinueve metros cincuenta centímetros (29.50 m.) con Calle número ocho (8) de la Urbanización Las Vegas; y por el SUR, en diez metros sesenta y cinco centímetros (10.65 m.), con Las Palmas Development Corporation.--
>
> ---Contiene una casa de una planta de concreto que consta de tres dormitorios, sala-comedor, cocina, baño, balcón y marquesina.------
>
> ---Consta inscrita en el Registro de la Propiedad de Puerto Rico, Sección Cuarta de Bayamón, al folio número Setenta y tres (73) del tomo Cincuenta y tres (53) de Cataño, finca número dos mil quinientos ochenta y tres (2,583).-------------------------------------
>
> ---Catastro número: 061-27-193-01-001.-------------------------------

---

[3] Apéndice, anejo 61, págs. 476-487.
[4] Apéndice, anejo 53, págs. 428-438.
[5] Apéndice, anejo 23, págs. 244-252.

En el año 2006, la entonces Administración de Reglamentos y Permisos (en adelante, ARPe) le otorgó al señor Álvarez Pérez el permiso de uso número 250668, para que pudiera operar un centro de ventas y servicios para herramientas de equipo automotriz.[6] También, le concedió el permiso de uso número 325895, para la operación de un centro de alineamiento, mecánica liviana, lavado de autos y venta de productos de mantenimiento de autos.[7]

Sin embargo, en el año 2011, el Municipio recalificó el predio en controversia. El apelante, expuso que lo recalificó de Industrial Uno (I-1) a Residencial Tres (R-3), ahora Residencial Intermedio (R-I), después de que la Junta de Planificación divulgara la Resolución JP-PT-14-1, y el Gobierno de Puerto Rico emitiera la Orden Ejecutiva 2011-007, en la que se aprobó el Plan de Ordenación Territorial del Municipio de Cataño (en adelante, "POT").[8] Sobre este particular, reclamó que no recibió notificación alguna de este cambio y procedió a presentar su oposición ante el Municipio.

El Municipio, mediante carta, le respondió que corregiría el error cometido en el Plano de Calificación del Municipio de Cataño.[9] No obstante, el señor Álvarez Pérez manifestó que no lo hizo. Como consecuencia, alegó que el cambio de calificación del terreno causó que su propiedad perdiera valor, menoscabando así su derecho de uso y disfrute sobre la misma.

Así pues, solicitó al foro de instancia que dictara una sentencia declaratoria en la que determinara lo siguiente:

a) el Plan de Uso de Terrenos de la Junta de Planificación (PUT-2015) y sus guías sobre la ordenación del territorio con fecha del 19 de noviembre de 2015 era la ley principal en la Planificación de Puerto Rico;
b) que el PUT-2015 obliga al Municipio de Cataño, imponiéndole el deber de integrar las calificaciones a los mapas de clasificación y hacerlas compatibles con estas últimas;
c) que los derechos adquiridos son reconocidos por el PUT;
d) que el PUT le concedió al Municipio dos (2) años para que comenzara el proceso de hacer compatibles las calificaciones con la clasificación;

---

[6] *Id.*, pág. 259.
[7] *Id.*, pág. 260.
[8] Apéndice, anejo 18, págs. 143-146.
[9] Apéndice, anejo 23, pág. 268.

e) que la parte demandante hizo gestiones ante el Municipio para que resolviese sobre la calificación residencial intermedio que le había impuesto cuando enmendó el Mapa de Zonificación de Cataño, el cual ostentaba una calificación industrial en el año 2011 y que el Municipio de Cataño no ha realizado lo que el PUT le ha requerido;

f) que el Distrito de Calificación Residencial Intermedio perjudica y tiene el efecto colateral de invalidar los derechos adquiridos por la parte demandante que opera allí hace más de dieciocho (18) años;

g) que el PUT-2015 establece que los usos válidamente establecidos en los terrenos actualmente calificados tienen derechos adquiridos para usos y desarrollos válidamente autorizados.[10]

Sostuvo, además, que, como consecuencia de lo anterior, se le han perjudicado sus derechos adquiridos. Que el cambio le ha afectado el valor de su propiedad, de los negocios y los usos posibles, por lo que la actuación del Municipio constituye una incautación reglamentaria que debe dilucidarse mediante el procedimiento de expropiación a la inversa, para que se le otorgue una justa compensación. Por último, solicitó que el foro primario le ordenara al Municipio corregir y cambiar la calificación de su propiedad.

En respuesta, el Municipio aseguró que no respondía legalmente por llevar a cabo la recalificación. Añadió que el proceso cumplió con todos los requisitos que exige la ley, por lo que los alegados daños eran inexistentes y, de haberlos, no existía relación causal con alguna actuación u omisión del Municipio. Señaló, además, que el remedio solicitado podía ser concedido únicamente por la Junta. Ante ello, solicitó la desestimación, con perjuicio, de la acción en su contra.

Por su parte, la Junta presentó su *Contestación a Demanda Enmendada*, en la que expuso que la propiedad en cuestión estaba clasificada como suelo urbano en el Plan de Uso de Terrenos de la Junta (en adelante, "PUT"), y tenía una calificación de Residencial Intermedio (R-I) de acuerdo con el Mapa de Calificación de Suelo del Gobierno Municipal de Cataño, vigente desde el 2011. En su opinión, el apelante no logró

---

[10] *Id.*, pág. 241.

establecer las obligaciones o deberes presuntamente incumplidos por la Junta. Por consiguiente, solicitó la desestimación del reclamo sometido.

Después de varias incidencias procesales que no son necesarias mencionar para resolver la controversia, el 18 de marzo de 2024, el apelante presentó una *Moción Solicitando Sentencia Sumaria.*[11] Afirmó que el PUT obligaba al Municipio a atemperar las calificaciones del POT de conformidad con los mapas de clasificación de la Junta. También, añadió que de acuerdo con el PUT-2015, este tenía un derecho adquirido sobre la calificación original de su propiedad de Industrial Liviano. En consecuencia, solicitó al tribunal apelado que decretara que el PUT-2015 era la ley principal que le imponía al Municipio atemperar los mapas de calificación con el PUT. Finalmente, solicitó que se recalificara su propiedad con la calificación de Industrial Uno (I-1).

Por su parte, el Municipio y la Junta se opusieron a las pretensiones del apelante de resolver la controversia de manera sumaria. Así, en su *Oposición a "Moción Solicitando Sentencia Sumaria",* el Municipio argumentó que existían controversias sobre los hechos materiales que impedían la concesión del remedio sumario.[12] Además, sostuvo que el apelante no cumplió con sustentar los hechos propuestos en su solicitud de sentencia sumaria, por lo que debe ser denegada. A su vez, solicitó que se dictara sentencia sumaria a su favor. Aseguró que, contrario a lo que alega el señor Álvarez Pérez, el Municipio sí cumplió con todos los procesos de notificación y realizó el cambio de calificación luego de celebrar las vistas públicas exigidas por la ley y los reglamentos, por lo que no procede cambiar la calificación. También, manifestó que el apelante debió acudir a la Junta y a la Oficina de Gerencia de Permisos (en adelante, "OGPe"), para solicitar el cambio de calificación, pues no existía un convenio de transferencia de facultades a favor del Municipio. Por último, sostuvo que

---

[11] Apéndice, anejo 23, págs. 227-287.
[12] Apéndice, anejo 19, págs. 159-222.

concederle la calificación de Industrial Intermedio al terreno en disputa tendría un efecto adverso para los vecinos de la Urbanización Las Vegas.

Por otro lado, la Junta sostuvo que la solicitud de sentencia sumaria presentada por el apelante incumplió con los requisitos estatuidos en la Regla 36.3 de Procedimiento Civil, al omitir y no especificar la acción sobre la cual solicita la sentencia sumaria.[13] También, adujo que el señor Álvarez Pérez no pudo sustentar con prueba admisible los hechos que alegó no estaban en controversia. No obstante, sostuvo que el PUT no impone la obligación a la Junta de calificar el predio en cuestión conforme a este. Sostiene que la calificación del predio como Residencial Intermedio (R-I) cae dentro de la clasificación de suelo urbano. Por tanto, cumple con la clasificación establecida en el PUT. Así pues, concluyó que, ante la inexistencia de la violación alegada, el reclamo del apelante no se justificaba.

Después de examinar las posiciones de las partes, el derecho aplicable y la prueba presentada, el foro *a quo* declaró No Ha Lugar la *Moción Solicitando Sentencia Sumaria* que presentó el apelante y, en consecuencia, desestimó, con perjuicio, la *Demanda Enmendada*, al amparo de la Regla 10.2 de Procedimiento Civil, *infra*. En consideración a las determinaciones de hechos que consignó, y que acogemos y hacemos formar parte de esta *Sentencia*, concluyó que de la evidencia admisible presentada surge que el Municipio cumplió con los requisitos estatutarios de notificación y celebración de vistas públicas. Además, determinó que el Plan de Ordenación Territorial del Municipio es consistente con el PUT-2015. Finalmente, decretó que "no quedó configurada la causa de acción de incautación reglamentaria […] por insuficiencia de prueba".

Oportunamente, el señor Álvarez Pérez presentó una *Reconsideración y Solicitud de Determinación de Hechos y de Derecho Adicionales* en la que reiteró sus alegaciones. No obstante, tanto el Municipio como la Junta se

---

[13] Apéndice, anejo 18, págs. 118-158.

opusieron al petitorio del apelante. Después de examinar las solicitudes de las partes, el 31 de octubre de 2024, el tribunal primario notificó una *Resolución* en la que declaró *No Ha Lugar* la solicitud de reconsideración presentada. El mismo día, emitió una *Sentencia Nunc Pro Tunc,* para corregir el uso por error de los términos "reclasificación" y "clasificación", en vez de "recalificación" y "calificación".

Aún en desacuerdo, el señor Álvarez Pérez acudió ante este foro intermedio mediante el recurso de epígrafe en el que señaló la comisión de los siguientes tres errores:

> Erró en derecho el Tribunal de Primera Instancia al declarar Con Lugar las Oposiciones a Moción de Sentencia Sumaria radicadas por la Junta de Planificación y el Municipio de Cataño, sin cumplir con las disposiciones de la Regla 36 de Procedimiento Civil.

> Erró en derecho el Tribunal de Primera Instancia al no aplicar el Plan de Uso de Terrenos de 2015 ("PUT-2015") el cual fue aprobado posterior a la recalificación del Plan de Ordenación Territorial del Municipio de Cataño de 2011, pues el "PUT-2015" reconoce los derechos adquiridos de la parte demandante a tenor con el uso autorizado y establecido allí previamente.

> Erró en derecho el Tribunal de Primera Instancia al enmendar su sentencia mediante una nunc pro tunc, pues usó como sinónimos los términos "calificar", "clasificar", "recalificar", incide en los temas de derecho, lo cual está prohibido por las Reglas de Procedimiento Civil y jurisprudencia aplicable.

**-II-**

**A. Sentencia Sumaria**

Las Regla 36 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 36, instituye el mecanismo de sentencia sumaria a nuestro ordenamiento jurídico. En particular, su función es permitir que cualquiera de las partes pueda mostrar, previo al juicio y luego del descubrimiento de prueba, que no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. 32 LPRA Ap. V, R. 36.1-36.2; *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 784-785 (2016).

En ese sentido, la parte promovente de la solicitud debe demostrar la inexistencia de una controversia de hecho material por medio de una

moción fundamentada, mientras que la parte promovida debe mostrar que existe controversia de algún hecho material sobre la totalidad o parte de la causa de acción. *Rodríguez Méndez v. Laser Eye,* supra, pág. 785. Además, la parte promovida no puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar evidencia que demuestre la existencia de controversia sustancial de hechos. *Id.* Sin embargo, ninguna de las partes puede enmendar sus alegaciones a través de la presentación de una sentencia sumaria o su oposición. *León Torres v. Rivera Lebrón,* 204 DPR 20, 47 (2020).

Así pues, para que el tribunal pueda adjudicar en los méritos una controversia de forma sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia ofrecida, surja que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente. 32 LPRA Ap. V, R. 36.3(e).

En cuanto a los hechos esenciales y pertinentes, también conocidos como hechos materiales, son aquellos que pueden afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Por lo tanto, el tribunal solo podrá dictar sentencia sumaria en los casos en los cuales tenga ante su consideración todos los hechos materiales para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. *Id.*

Conviene destacar que el Tribunal Supremo ha dispuesto que, el foro apelativo se encuentra en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia de una solicitud de sentencia sumaria. *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020). *Meléndez González et al. v M. Cuebas,* 193 DPR 100, 115 (2015). Además, el Alto Foro estableció el estándar específico de revisión que debe utilizar el

Tribunal de Apelaciones, a saber: (1) examinar de *novo* el expediente, de la manera más favorable a favor de la parte promovida, y aplicar las disposiciones de la Regla 36 de Procedimiento Civil, *supra* como su jurisprudencia interpretativa; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificada en la Regla 36.4 de Procedimiento Civil, *supra;* (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, exponer concretamente los hechos materiales controvertidos e incontrovertidos; y (4) de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar de *novo* si el foro primario aplicó correctamente el derecho a la controversia. *Meléndez González et al. v M. Cuebas,* supra, págs. 117-119. Además, el foro apelativo en su revisión está limitado a lo siguiente:

> *[P]rimero*, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit*[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. *Id.,* pág. 114-115.

## B. Facultad de los municipios para elaborar los Planes de Ordenación Territorial

La derogada Ley Núm. 81-1991, conocida como la *Ley de Municipios Autónomos de Puerto Rico,* se aprobó con el propósito de dejar atrás la idea de que los municipios solo prestaban servicios básicos y, en cambio, otorgarles mayor autonomía fiscal y de gobierno. A esos fines, se le confirió la autoridad para organizar sus territorios mediante la creación de planes de ordenación territorial que debían contener estrategias y disposiciones para el manejo del suelo urbano. Artículo 13.001 de la Ley Núm. 81-1991, 21 LPRA sec. 4601 nota.

Posteriormente, y a los fines de integrar, organizar y actualizar las leyes que regulan la organización, administración y funcionamiento de los municipios, además de otorgar mayor autonomía a estos, la Asamblea

Legislativa aprobó la Ley Núm. 107-2020, según enmendada, conocida como el Código Municipal de Puerto Rico (21 LPRA sec. 7001 *et seq.*). Este estatuto derogó la anterior Ley Núm. 81-1991.

Mediante esta nueva legislación, se estableció que los Planes de Ordenación Territorial deben ser elaborados o revisados por los municipios en estrecha coordinación con la Junta de Planificación y otras agencias. De forma tal, que se garantice la compatibilidad con los planes estatales, regionales y municipales. Artículo 6.011 de la Ley Núm. 107-2020, 21 LPRA sec. 7861.

Antes de que un municipio inicie la elaboración o revisión de un Plan de Ordenación, debe notificar a la Junta de Planificación. Una vez notificada, la agencia tiene un plazo de sesenta (60) días, para emitir una resolución indicando los factores que deben considerarse. *Id.* No obstante, en caso de que la Junta no actúe dentro de dicho término, el municipio puede continuar el proceso sin su aprobación. *Id.* La elaboración o revisión de un Plan de Ordenación se desarrollará en una sola etapa, mediante la preparación secuencial o concurrente de una serie de documentos. A esta etapa le sigue un proceso de participación ciudadana, a través de vistas públicas. *Id.* El municipio deberá notificar a la Junta de todas las vistas públicas a celebrarse y le remitirá copia de los documentos a presentarse. *Id.*

Los Planes de Ordenamiento requieren la aprobación de la legislatura municipal mediante ordenanza, la adopción por la Junta y la aprobación final del Gobernador. *Id.* En caso de que la Junta rechace el plan propuesto, emitirá una resolución con los fundamentos para su decisión. De no lograrse un consenso para su adopción, el Gobernador tomará la decisión definitiva. *Id.*

La revisión de los Planes de Ordenación se llevará a cabo en el plazo determinado en los mismos. *Id.* También, pueden llevarse a cabo revisiones parciales cuando ocurran cambios en las circunstancias. No obstante, el

Plan Territorial se revisará de forma integral cada ocho años. *Id.* Las revisiones parciales de los Planes de Ordenación deben contar con al menos una vista pública, aprobación municipal mediante ordenanza, adopción de la Junta y ratificación del Gobernador. *Id.*

Es pertinente aclarar que un Plan de Ordenación no es igual que un Plan de Uso de Terrenos. El primero, es promulgado por el municipio para disponer sobre el uso del suelo dentro de sus límites territoriales con el fin de promover el bienestar social y económico de la población. Artículo 8.001 de la Ley Núm. 107-2020, 21 LPRA sec. 8351. Mientras, el Plan de Uso de Terrenos es un documento de política pública adoptado por la Junta de Planificación para designar la distribución, localización, extensión e intensidad del uso del suelo. *Id.*

Cabe señalar que hay ciertas facultades sobre ordenación territorial a cargo de la Junta y de la OGPe que pueden ser transferidas a los municipios. Artículo 6.015 de la Ley Núm. 107-2020, 21 LPRA sec. 7865. Para ello, el alcalde, previa aprobación de la Legislatura Municipal, podrá solicitar al Gobernador "la transferencia de la jerarquía de facultades de ordenación territorial de que se trate". *Id.*

El inciso (e) del Artículo 6.015, *supra*, también dispone que el Municipio establecerá las normas necesarias para garantizar la colaboración con la Junta y OGPe en el proceso de transferencia de facultades. A su vez, expresa lo siguiente:

> El convenio podrá establecer limitaciones en las facultades delegadas, de acuerdo [con] la capacidad del municipio. [...]. Las transferencias se otorgarán por jerarquías, por etapas secuenciales o simultáneamente, y una vez transferida una jerarquía se transfiere el proceso completo de evaluación de dicha jerarquía, excepto por aquellas facultades reservadas por las agencias públicas o por un convenio. Una vez transferida la jerarquía, también se transferirán los trámites incidentales correspondientes, tales como consultas de conformidad, autorizaciones para demoliciones, traslados de estructuras, movimientos de tierra, sometimiento al Régimen de Propiedad Horizontal, y rectificaciones de cabida, entre otros. *Id.*

## C. La Junta de Planificación

La Ley Núm. 75 de 24 de junio de 1975, según enmendada, conocida como Ley Orgánica de la Junta de Planificación de Puerto Rico, se creó con

el propósito de dirigir el desarrollo integral de Puerto Rico de manera coordinada, adecuada y económica, tomando en cuenta "las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes". 23 LPRA sec. 62c. Para cumplir con dicho propósito, la ley le otorga a la Junta la autoridad para adoptar las normas y reglamentos que permite la ley. 23 LPRA sec. 62j.

De conformidad, la Asamblea Legislativa aprobó la Ley Núm. 550-2004, según enmendada, conocida como la Ley para el Plan de Uso de Terrenos del Estado Libre Asociado de Puerto Rico (en adelante, "Ley para el Plan de Uso de Terrenos"). Este estatuto se creó con el propósito de promover la elaboración del Plan de Uso de Terrenos de Puerto Rico, "para que sirva de instrumento principal en la planificación que propicie el desarrollo sustentable de nuestro país y el aprovechamiento óptimo de los terrenos". 23 LPRA sec. 227.

La Ley Núm. 550-2004, supra, también creó la Oficina del Plan de Uso de Terrenos, adscrita a la Junta de Planificación. *Id.* Entre sus funciones principales se encuentra la formulación del Plan de Uso de Terrenos y los documentos suplementarios. *Id.*

También, el Artículo 13 de la referida ley, 23 LPRA sec. 227j, dispone como sigue:

> Los planes regionales y los planes municipales de ordenación territorial, establecidos bajo la Ley de Municipios Autónomos, según enmendada, deberán armonizar y ser compatibles con la política pública y con las disposiciones del Plan de Uso de Terrenos de Puerto Rico cuya preparación e implantación se requiere por virtud de esta Ley.
> Durante el proceso de elaboración y aprobación del Plan al igual que posterior a su vigencia, el estado de derecho en lo relativo a las facultades y los procedimientos de los municipios en relación con los planes de ordenación territorial, se mantendrán vigentes con toda su fuerza.

De conformidad, el 19 de noviembre de 2015, la Junta aprobó el Plan de Uso de Terrenos, Guías de Ordenación del Territorio, Reglamento Núm. 8670 de 4 de diciembre de 2015 (en adelante, el "PUT- 2015").

En su parte pertinente, el PUT-2015, pág. 19, aclara que el Plan no constituye una denegación de todo uso o todo uso económicamente razonable, "pues solo clasifica los terrenos, y no los califica". Sobre este particular, el PUT-2015 distingue la clasificación de la calificación. Así pues, dispone que las clasificaciones "establecen las categorías generales que ordenan el suelo conforme a sus características y valores (existentes y potenciales) y se utilizan 'para disponer la ordenación de los usos y las estructuras en estos suelos'". *Id.* En cambio, la calificación consiste en "las demarcaciones espaciales en los cuales se subdivide un territorio para distribuir y ordenar los usos o edificaciones permitidas". *Id.* En esta, se establecen los usos, densidades y alturas del terreno, entre otros parámetros. Así pues, aclara que:

> [...] solo mediante la calificación se podrían establecer suficientes restricciones a una parcela o propiedad como para que pudiera considerarse una afectación por la denegación de todo uso productivo. *Id.*

Sin embargo, afirma que el Plan no altera los "usos válidamente establecidos en los terrenos actualmente clasificados, puesto que se reconocen los derechos adquiridos para usos y desarrollos válidamente autorizados". *Id.*

A propósito de la controversia ante nuestra consideración, citaremos en extenso el inciso 9 del PUT-2015, pág. 20, que detalla el procedimiento de la reclasificación de terrenos:

> El *Plan de Uso de Terrenos* no califica, solo clasifica. Por lo tanto, no produce un cambio de calificación. El proceso de actualización de los distintos instrumentos de planificación comenzará con posterioridad a la aprobación del *Plan de Uso de Terrenos*. Tanto la Junta de Planificación como los municipios, deberán comenzar a trabajar en el proceso de actualización de las clasificaciones y calificaciones.
>
> Como parte del proceso anterior, es posible que se produzcan cambios en la calificación. Estos cumplirán con el correspondiente proceso de participación pública y Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada.

> Se aclara que el concepto de *downzoning* o recalificación a una densidad menor a la vigente es parte de todo proceso de planificación. En el ejercicio de desarrollar un plan, se revisa la calificación y se adapta a las necesidades de los objetivos de plan. Ninguna calificación es permanente, y si las circunstancias cambian y el terreno no ha sido desarrollado, puede cambiar a otra calificación. Las clasificaciones y las calificaciones no constituyen derechos adquiridos.
>
> [...].

Expuesto el derecho aplicable, este Tribunal se encuentra en posición para resolver la controversia señalada en el recurso de epígrafe.

**-III-**

Para el apelante, el foro de instancia erró al declarar no ha lugar su solicitud de sentencia sumaria y decretar ha lugar las oposiciones que presentaron las partes apeladas. Señala que las oposiciones no cumplieron con el inciso (4) de la Regla 36.3, *supra*, al no exponer una relación concisa y organizada de los hechos esenciales y pertinentes sobre los cuales no había controversia sustancial. Añade que los apelados no atendieron las controversias medulares que estableció en su solicitud y solo se limitaron a esgrimir argumentos que el tribunal apelado ya había resuelto en contra de estos. Aduce que los apelados negaron hechos que constaban en los documentos oficiales, sometidos como prueba, y que demuestran que este tiene razón en sus reclamos.

En cambio, el Municipio asegura que la moción de sentencia sumaria que presentó el señor Álvarez Pérez no cumplió con la Regla 36.3, *supra*, debido a que no incluyó referencia a las páginas o párrafos de la evidencia que acompañó para sustentar sus alegaciones, como tampoco anejó prueba para apoyar otros hechos propuestos. A su entender esta omisión, por sí sola, es suficiente para denegar la petición sumaria.

Por su parte, la Junta entiende que presentó su oposición de conformidad con la Regla 36.3, *supra*. Opina que, por el contrario, el apelante no cumplió con las exigencias de la norma procesal, al no lograr que la evidencia que sometió respaldara los alegados hechos materiales

incontrovertidos que incluyó en su solicitud. Aduce que el apelante no estableció su derecho con claridad, ni demostró la inexistencia de controversia sobre algún hecho esencial y pertinente. Veamos.

Después de examinar de *novo* el expediente, concluimos que la *Moción Solicitando Sentencia Sumaria* que presentó el señor Álvarez Pérez no cumplió con varias de las exigencias de la Regla 36.3 (a) de Procedimiento Civil, *supra*. La solicitud del apelante no incluyó la causa de acción, reclamación o parte respecto a la cual solicitó la sentencia sumaria. También, falló en indicar específicamente los párrafos o páginas de la prueba que sometió, en donde se establecen los hechos esenciales y pertinentes que estimó incontrovertidos. Ciertamente, el tribunal apelado no está obligado a considerar aquella parte de la prueba admisible que no esté correctamente citada en una relación de hechos. De igual manera, el juzgador no tiene que admitir y puede excluir aquellos hechos enumerados que no tengan una correlación específica a la evidencia que lo sostiene.

Por el contrario, las mociones en oposición a la solicitud de sentencia sumaria que presentaron los apelados, en esencia cumplieron con los requisitos de forma que exige la norma procesal. También, ambas lograron demostrar, de manera detallada y específica, que el señor Álvarez Pérez no pudo sustentar, ni relacionar con la evidencia sometida los alegados hechos esenciales incontrovertidos. Nos explicamos.

En esencia, el apelante alega que el Municipio y la Junta incidieron al recalificar su propiedad bajo la categoría R-I, después de que se aprobara el Plan de Ordenación Territorial, mediante la Ordenanza Municipal Núm. 3, Serie 2010-2011, del 6 de octubre de 2010; la Resolución de la Junta Núm. JP-PT-14-1 y la Orden Ejecutiva Núm. OE-2011-007, emitida el 10 de marzo de 2011. Sostiene que el Municipio no le notificó adecuadamente sobre este cambio, por lo que cuestionó la acción cuando supo de la recalificación. Añade que el Municipio no atemperó las calificaciones conforme dispone el PUT-2015 y que la recalificación de su predio a R-I lo ha privado de sus derechos adquiridos que el PUT-2015 le reconoce.

Como mencionamos, el apelante no pudo sustentar cada una de sus alegaciones en su petición de despacho sumario. No obstante, tanto el Municipio como la Junta no solo demostraron que el señor Álvarez Pérez no cumplió con las exigencias de la Regla 36, *supra*, sino que presentaron evidencia demostrativa de que el Municipio cumplió con notificar al público de la celebración de vistas públicas para elaborar el Plan de Ordenación Territorial, mediante la publicación de varios edictos en los periódicos principales del país.[14]

Igualmente, la oposición probó que la recalificación del predio en controversia no contravino el PUT-2015, pues aquel está clasificado como Suelo Urbano (SU) y la calificación R-I no es incompatible con esta clasificación.[15] Además, no existe un derecho adquirido que se haya violentado. Mucho menos se demostró que la recalificación disminuyera sus actividades comerciales, pues de los documentos contenidos en el expediente surge que la OGPe expidió los permisos únicos a favor de los negocios del señor Álvarez Pérez bajo la calificación que cuestiona.[16]

Por último, el apelante aduce que el tribunal primario incidió al enmendar la *Sentencia nunc pro tunc*, para corregir la utilización indistinta de los términos de calificación y clasificación. A su entender, esta corrección era improcedente, pues no se trata de un error de forma, mecanográfico o una omisión o inadvertencia en la *Sentencia*, sino de un error sustancial de derecho.

Sin embargo, la corrección aludida no cambia el resultado del dictamen, ni afectó el derecho del apelante a presentar el recurso de epígrafe, por lo que es innecesario atender ese planteamiento.

En mérito de lo anterior, concluimos que el tribunal primario no erró al declarar ha lugar las oposiciones presentadas por los apelados y concluir

---

[14] Apéndice, anejo 18, págs. 147-152.
[15] *Id.*, pág. 155.
[16] Apéndice, anejo 23, págs. 273-286.

que, ante la ausencia de evidencia que sustentara los hechos propuestos por el apelante, procedía la desestimación con perjuicio de la *Demanda*.

**-IV-**

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones